**A. DOE et al., Minors, by S. Doe et al., Grdns., Appellants,**

**v.**

**FIRST PRESBYTERIAN CHURCH (USA), Appellee.**

[Cite as *A. Doe v. First Presbyterian Church (USA)* (1998), 126 Ohio App.3d 358.]

Court of Appeals of Ohio,
Fifth District, Richland County.

No. 97–CA48–2.

Decided Aug. 28, 1998.

360

*Thomas L. Colaluca,* for appellants.

*William Travis McIntyre,* for appellee.

GWIN, Judge.

Plaintiffs, nine minors referred to in the record as A through I Doe, by their eight guardians referred to in the record as S through Z Doe, appeal a summary judgment of the Court of Common Pleas of Richland County, Ohio, entered in favor of defendant First Presbyterian Church (USA) in this action for negligent supervision, negligent retention, and negligent hiring of two church employees who molested the various minor plaintiffs at appellee church. Appellants assign four errors to the trial court:

"Assignment of Error No. 1

"The trial court incorrectly entered judgment in favor of defendants [*sic*] as a matter of law because the defendant failed to meet its burden of specifically pointing to some evidence demonstrating an absence of genuine issue of material fact.

"Assignment of Error No. 2

"The trial court erred as a matter of law by erroneously applying and interpreting the pleading requirements set forth in *Byrd v. Faber* in granting summary judgment by misinterpreting the evidentiary proof required to survive

summary judgment and the plaintiffs' counts for negligent hiring, negligent retention and negligent supervision.

"Assignment of Error No. 3

"The trial court incorrectly granted summary judgment to the defendant [because] genuine issues of material fact remain in dispute as to whether the defendant negligently hired and retained child–care givers, whether the defendant negligently supervised employees, and whether the defendant negligently supervised children of tender years entrusted to its care."

Appellants' statement pursuant to Loc.App.R. 4(D) asserts that the trial court's judgment is inappropriate both because it is contrary to law and because there are genuine disputes as to material facts.

It appears uncontroverted in the record the various minor appellants were physically and sexually abused by two teenage babysitters employed by appellee church in the church's bathrooms, classrooms, and adjacent property. From 1988 to 1992, Larry Rohde and Scott Butner acted as babysitters or child-care givers for appellee First Presbyterian Church during church services and activities. In 1992, Rohde was convicted of various counts of sexual molestation, while Butner pled guilty to sexual molestation. Both Rohde and Butner are incarcerated.

Appellants argued that the church instituted few or no procedures for hiring, retention, or supervision of the teenagers.

The church had a preschool, a youth service, a Sunday School, Bethel, and special activities. When appellee held a function for adults, the children were somewhere else in the church. According to the church policy, there should be at least one adult and a youth at each activity for the children. Also, at the Sunday morning service, at the end of the children's message, the children would leave the sanctuary and go to classrooms.

The Director of Christian Education trained the Sunday school teachers, supervised the church activities, and made sure there was adequate supervision at the worship hour. The Director of Christian Education and Children's Ministries was in charge of the hiring, training, and supervision of the church's employees, including recruiting them and putting them on the list as caregivers and babysitters.

The thrust of appellants' negligent action against the church concerned Scott Butner. Appellants argue that if the church had adequately screened Scott Butner, it would have discovered certain risk indicators that would have put the church on notice that Butner was not suitable to be around young children. The risk factors appellants identify concern incidents in Butner's home and school. Specifically, Butner was an emotionally troubled student and the school was aware of some sort of letter Butner had authored expressing violent sexual

fantasies about a girl. The record indicates that the girl in the fantasies was not a young child. Butner had also engaged in a fight at school. There is also evidence in the record that Butner's sister had accused their father of sexually molesting her.

From the early 1980s to 1990, the Director of Christian Education was Virginia Hardman, and, thereafter, the Director of Christian Education was Sue Love. At her deposition, Hardman admitted knowing Butner and believed that he was socially maladjusted. Hardman characterized Butner as a "sad little boy." Both Hardman and Love deposed that they were not aware that any child had ever been alone with any youth assistant in a classroom, a bathroom, or the woods. To the contrary, unwritten church policy provided that there should always be an adult present.

The record indicates that on numerous occasions, Butner and Rohde engaged in violent physical, and appalling sexual, activities with children on the church property.

Civ. R. 56(C) states in pertinent part:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

A trial court should not enter summary judgment if it appears that a material fact is in genuine dispute, or if, construing the allegations most favorably towards the nonmoving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 433, 21 O.O.3d 267, 271, 424 N.E.2d 311, 314–315. A trial court may not resolve ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 15 OBR 448, 474 N.E.2d 271. A reviewing court reviews a summary judgment by the same standard as the trial court did, *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 506 N.E.2d 212. In the recent case of *Vahila v. Hall* (1997), 77

Ohio St.3d 421, 674 N.E.2d 1164. The Supreme Court explained the procedural development of a motion for summary judgment. First, the party seeking summary judgment must disclose the basis for the motion and support the motion with evidence. *Vahila* at 429, 674 N.E.2d at 1170, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47–48; *Hamlin v. McAlpin Co.* (1964), 175 Ohio St. 517, 519–520, 26 O.O.2d 206, 207–208, 196 N.E.2d 781, 783–784. In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 295, 662 N.E.2d 264, 275, the Supreme Court limited paragraph three of the syllabus announced in *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. In *Dresher,* the Supreme Court noted that a moving party bears the initial burden of identifying evidence in the record that demonstrates the absence of genuine issues of material fact on the essential elements of the nonmoving party's case. The moving party cannot simply make an assertion that its opponent has no evidence to prove its case. If the moving party meets its burden, the nonmoving party then has a reciprocal burden, as set forth in Civ. R. 56(E), to set forth specific facts showing that there is a genuine issue for trial. *Vahila* at 429, 674 N.E.2d at 1170–1171.

Originally, appellee filed a motion to dismiss pursuant to Civ.R. 12(B)(6). The court, *sua sponte,* converted the motion to dismiss to a motion for summary judgment. Against this legal and procedural backdrop, we review this action.

## I

■ In their first assignment of error, appellants urge that the trial court incorrectly applied the rule of law enunciated in *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 565 N.E.2d 584. In *Byrd,* the Ohio Supreme Court held that a plaintiff bringing a negligent-hiring claim against a religious institution must plead operative facts with particularity to show that the individual hired had a past history of criminal, tortious, or otherwise dangerous conduct about which the religious institution knew or could have discovered through reasonable investigation. The rationale behind the *Byrd* rule is to limit the state's assessment of a religious institution's hiring practices because the practices may be infused with religious tenets. The courts may be asked to violate First Amendment Rights. Appellants argue that the *Byrd* pleading standard is specifically directed to a motion made pursuant to Civ. R. 12(B)(6) and does not apply to motions for summary judgment.

■ We find that appellants are partially correct. *Byrd* enunciates the elements of the tort, and, to this extent, the *Byrd* rule applies. Appellants must show that appellee knew or could have discovered that these teenage boys had a past history of criminal, tortious, or otherwise dangerous conduct, or that

appellee could have discovered such facts through reasonable investigation. To this extent, we hold that *Byrd* applies.

■ Having said this, however, we find that the *Byrd* pleading standard does not apply to motions for summary judgment. The rationale for *Byrd* is to prevent unwarranted disclosure of appellee's hiring practices. *Byrd* provides a mechanism whereby a church's hiring practices are shielded from discovery. In order to respond to the motion for summary judgment, appellants deposed both Hardman and Love, the persons appellee charged with selecting the babysitters. When the trial court converted the motion to dismiss to a motion for summary judgment, it took the action from the pleadings stage into discovery and depositions. Thereafter, any information that the *Byrd* specificity-of-pleadings rule might have shielded was discovered and placed into the record.

A trial court should conduct a *Byrd* review of the pleadings solely on the pleadings and, if necessary, prior to determining whether it is appropriate to convert a Civ.R. 12 motion to one under Civ.R. 56.

■ We find that the trial court properly looked to the Supreme Court's holding in *Byrd v. Faber* in order to determine what appellants were required to plead and prove in order to prevail in their action. However, we also find that on a motion for summary judgment, it is inappropriate for the court to utilize the Civ.R. 12(B)(6) standard.

The first assignment of error is sustained.

## II

■ In their second assignment of error, appellants argue that the trial court erred as a matter of law in applying *Byrd v. Faber*, by misinterpreting the evidentiary proof required to survive summary judgment in the counts for negligent hiring, negligent retention, and negligent supervision. We disagree. As we noted above *Byrd* sets forth the elements that appellants must prove to prevail. Pursuant to *Vahila*, a trial court correctly requires the nonmovant to produce evidence on any issue for which he carries the burden of proof after the moving party has identified the issue in its motion for summary judgment and met its burden of presenting evidence tending to show that the nonmoving party has no evidence to prove its case.

The second assignment of error is overruled.

## III

In their third assignment of error, appellants argued that genuine issues of material fact remain in dispute regarding whether appellee negligently hired and

retained Rohde and Butner, negligently supervised them, and negligently supervised the children participating in the church activities.

The trial court noted that appellants had presented nothing regarding Larry Rohde.

In regard to hiring Scott Butner, the court reviewed the evidence that Hardman had known Scott Butner since he was a little boy. She admitted that he was a "sad little boy" who was not socially adept and appeared to need affection. In 1984, the church pastor had learned that Scott's sister Amy had accused her father of sexually abusing her. Appellants argued to the court that the church should have checked with Butner's high school guidance counselor. Appellants argued that the counselor would have told the church that the counselor thought Butner was a "nerd," that the school had confiscated a letter that Butner had written about an unspecified sexual fantasy not involving children, and that Butner's mother had experienced trouble getting him to go to school. The court noted, "The plaintiffs do not explain how the church was supposed to know the guidance counselor had this information or to convince him to give it to them."

The trial court found that the factual allegations were insufficient as a matter of law to support a finding of negligent hiring, and we agree. Appellants have not demonstrated that the church knew or should have known the existence of this evidence and have not demonstrated that a reasonable person in the church's situation would have understood that the evidence indicated that Butner presented a danger to small children. Appellants have not shown that the school could have divulged the information to the church prior to the regrettable incident with the children. *Byrd* requires that appellants show that the church knew or with reasonable diligence should have known of criminal, tortious, or dangerous conduct. We find that this information does not rise to the required level.

However, after Butner had worked with the school for some time, it appears that the church became aware of problems with his performance. Reasonable minds could differ on the issue of whether this should have influenced the church's retention and supervision of Butner. It appears from the record that one parent complained to Hardman that he observed Butner playing rather roughly with children. Love either observed or was informed that Butner let a child sit on his lap, which she felt was inappropriate. Hardman also testified that she observed him conversing with another teenager when he should have been attending to the children. As a result, Hardman forbade him to be around little children, and Love required Butner to repeat the caregiver classes. Butner's mother intervened, and Hardman then allowed Butner to assist but only when his mother was the adult caregiver whom he assisted. The church had a policy of

requiring that an adult be present with the teenage caregivers, but it appears clear from the record that Butner and Rohde managed to circumvent this policy on numerous occasions, with appalling and disastrous results.

The trial court appeared to combine the counts of negligent hiring, retention, and supervision altogether. We find that this was erroneous. While we agree with the trial court that there was insufficient information available to the church at the time of the hiring, nevertheless, the situation as it evolved provided the church with further information about Butner. We find that reasonable minds could differ regarding whether the church acted appropriately in retaining and supervising Butner, given the emerging facts that it knew or should have known, and also could differ regarding whether the church negligently supervised the children entrusted to it. Accordingly, we conclude that on the issues of negligent retention and supervision, the court improperly entered summary judgment.

The third assignment of error is sustained in part and overruled in part.

## IV

In their final assignment of error, appellants argue that the trial court erred as a matter of law in granting summary judgment on the issue of punitive damages because the pleadings and evidence demonstrate that appellee behaved in such conscious disregard of the rights and safety of the minor plaintiffs and their guardians. Appellee asserts that in order to demonstrate conduct worthy of a punitive damage award, a plaintiff must show hatred, ill will, spirit of revenge, outrageous behavior, or willful indifference to the rights and safety of others. See *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174.

Appellants argue that the question of whether appellee's conduct warranted an award of punitive damages is an issue for the trier of fact when considering the evidence presented at trial on this matter. In fact, the trial court held that punitive damages are not recoverable in negligence actions, and this is not true as a *per se* rule. In *Stephens v. A–Able Rents Co.* (1995), 101 Ohio App.3d 20, 654 N.E.2d 1315, the Court of Appeals for Cuyahoga County found that punitive damages may be recoverable in a negligent-hiring action. As the appeals court noted, proof of actual malice is necessary for an award of punitive damages, citing *Preston, supra.*

We find that reasonable minds could differ regarding whether appellee's conduct demonstrated a conscious disregard for appellants' rights and safety having a great probability of substantial harm.

In *Stephens, supra,* the employer put forth very little effort to determine whether the person it had hired was trustworthy to enter customer's homes. In *Stephens,* the employer failed to investigate the employee's background and failed

to discover that the employee abused crack cocaine. *Stephens* at 27, 654 N.E.2d at 1319–1320. The Cuyahoga County Court of Appeals found that the employer's failure to investigate this issue constituted conscious disregard for safety of its customers, with substantial probability of great harm, which unfortunately befell one of the customers.

Here, the record is clear that appellee appreciated the fact that it was dealing with very young children, and the court apparently believed that this was sufficient as a matter of law to demonstrate that appellee was not wantonly careless in its handling of these children. We find that this presents a jury issue, and the trial court improperly granted summary judgment on this issue.

The fourth assignment of error is sustained.

For the forgoing reasons, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed in part and reversed in part, and the cause is remanded to that court for further proceedings on the issues of negligent retention, negligent supervision, and punitive damages.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

FARMER, P.J., and READER, J., concur.