OPINION
This appeal is taken by Appellants MTD Products Inc. and Aircap Industries Corp. from the judgment entered by the Court of Common Pleas of Paulding County finding MTD Products and Aircap Industries, Corp. contractually obligated to provide a defense and indemnity to Cosco, Inc., Dorel U.S.A., Inc., and Kidde Industries, Inc. and awarding damages as well.
The case originated as a products liability action between the plaintiffs, Dobbelaere, and co-defendants, Cosco, Inc., Dorel U.S.A., Kidde Industries, Inc., (hereinafter collectively known as "Cosco"), Tractor Supply Co., MTD Products, Inc. ("MTD"), and Aircap Industries Corp. ("AIC"). The following facts are pertinent to the case now before us.
Dobbelaere was injured by a product that was originally manufactured by Cosco. In January 1985, Cosco sold that particular product line to Aircap Industries, Inc. ("Aircap"). In the purchase agreement between Cosco and Aircap, Aircap agreed to assume all liabilities of the product line except liabilities arising out of defects reported to the Consumer Products Safety Commission. These liabilities included the duty to defend and indemnify
On June 3, 1986, Aircap sold its assets, including the product line at issue, to AIC and MTD (collectively "MTD"). MTD agreed to assume all liabilities of Aircap. These liabilities included the duty defend and to indemnify. After the original complaint was filed Cosco filed a cross-claim against MTD seeking indemnification and damages relating to the duty to defend as required by the purchase agreement.
On July 28, 1997, the trial court granted summary judgment to all of the defendants on all issues of liability. The judgment entry read in pertinent part:
 The plaintiffs' claim involved a TA-1200 Brush Cutter not relating to the characteristics of the Model TA-1200 Brush Cutter reported to the Consumer Product Safety Commission on August 15, 1984;
 Pursuant to the January 10, 1985 Agreement of Purchase and Sale of Assets between Cosco, Inc., and Aircap Industries, Inc., Aircap Industries, Inc. assumed liability for plaintiff's injuries and was required to provide a defense, indemnify and hold harmless the Cosco defendants from any losses, claims, and/or attorney fees stemming from said claim;
 Pursuant to the June 3, 1986 agreement of purchase and sale between Aircap Ind., Inc. and Aircap Ind. Corporation/MTD Products, Inc., Aircap Industries Corporation and MTD Products, Inc. assumed any and all liabilities of Aircap Industries, Inc., and therefore Aircap Industries Corporation and MTD Products, Inc. are required to provide a defense, indemnify and hold harmless the Cosco defendants against plaintiff's allegations in this case.
 Cosco, Inc., Dorel U.S.A., Inc., and Kidde Industries, Inc. are entitled to judgment against Aircap Industries, Inc., Aircap Industries Corporation, and MTD Products, Inc. for indemnity for any and all costs, expenses, and/or attorney fees incurred in the defense of this case from its inception and said defendants should be ordered to provide a defense to Cosco, Inc., Dorel U.S.A., Inc., and Kidde Industries, Inc.
Dobbelaere appealed the judgment entry of the trial court granting the Defendants' summary judgment motion and this Court affirmed that decision on appeal. It read in part:
 "Therefore construing the evidence in a light most favorable to Dobbelaere, the Cosco defendants successfully transferred all liability, for the purposes of this case to Aircap. Even if Cosco manufactured the brushcutter that injured Dobbelaere, liability rests with the successor to the product line.
* * *
 Therefore, when MTD defendants purchased the KS product line from Aircap, they assumed the same liability Aircap held when it owned the KS product line. * * * MTD defendants hold the liability for personal injuries the brushcutter caused Dobbelaere under the theory of successor corporate liability."
MTD filed an appeal of the cross-claim arguing that the trial judge incorrectly decided that they had a duty to indemnify and defend. However, this court refused to hear the appeal because the trial judge had failed to issue an actual amount of damages and thus, this court was without jurisdiction to hear the appeal because there was no final appealable order. Therefore the appeal was denied in a journal entry dated September 19, 1997.
On April 1, 1998, Cosco filed a motion for summary judgment on the issue of damages. Then on April 9, 1998 MTD filed its own motion for summary judgment along with a memorandum in opposition to Cosco's motion for summary judgment.
On November 29, 1999, the trial court issued its judgment entry finding MTD liable for damages in the amount of $28,754.26 and ordering them to pay all costs incurred by Cosco up to and including December 31, 1997. On appeal from that entry MTD makes the following two assignments of error:
 The trial court erred in awarding summary judgment to the Cosco Defendants and failing to award summary judgment to the motion to dismiss defendants on the cross-claim against the MTD defendants.
 The trial court erred in awarding summary judgment to the Cosco Defendants and failing to award summary judgment to the MTD defendants on the issue of damages.
MTD claims in both assignments of error that the trial court erroneously granted summary judgment in failing to dismiss the claim against MTD for indemnification and further for awarding damages. For purposes of convenience and clarity we will review the assignments of error together.
When reviewing summary judgment, we review the judgment independently and without any deference to previous determination by the trial court. Conley-Slowinski v. Superior Spinning Stamping Co. (1998), 128 Ohio App.3d 360. The standard of review in this court is de novo. AAAA Enterprises, Inc. v. River PlaceCommunity Urban Redevelopment Corp. (1990) 50 Ohio St.3d 157,553 N.E.2d 597.
Summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most favorably in the light of the non-moving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Civ.R. 56(C); Bostic v. Connor (1988), 37 Ohio St.3d 144,524 N.E.2d 881.
The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett(1986),477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265.
Once the moving party meets its burden, the nonmoving party then has a reciprocal burden to set forth specific facts showing that there is a genuine issue of material fact for trial. A. Doev. First Presbyterian Church (USA) (1998), 126 Ohio App.3d 358,364; Civ.R. 56(E). The nonmoving party may not rest on the mere allegations of her pleading. State ex rel. Burns v. Athens Cty.Clerk of Courts(1998) 83 Ohio St.3d 523, 524 citing Mootispaw v.Eckstein(1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197, 1199; Civ.R. 56(E).
On appeal MTD's sole argument is that it was improper for the trial court to grant summary judgment to Cosco and that, in fact, summary judgment should have been granted to them on the issue of damages as well as duty to defend and indemnify. Cosco, on the other hand argued in their brief and orally before this Court that MTD failed to file a brief in opposition to their motion for summary judgment and thus, failed to meet its burden under the law, and summary judgment was, indeed, proper. After careful review of the record, however, that argument is devoid of merit. Cosco next argues that MTD is estopped from denying its duty to indemnify and defend Cosco because of the reasoning used by this court in the opinion affirming the trial court's decision to dismiss the underlying causes of action brought by Dobbelaere in the initial lawsuit.
As stated above, our review of summary judgment is de novo, therefore, we will give no deference to the decision of the trial court and shall review the circumstances of the case and the record before us on appeal independently. It must be noted that neither party disputes the genuine character of the contracts and thus there is no question of fact at issue, merely a question of law.
The initial question becomes then was there indeed a duty on the part of MTD to defend and indemnify Cosco. If that question is answered in the affirmative then the issue becomes were the damages proper. However, should there be no duty to indemnify or defend on the part of MTD then the issue of damages becomes moot.
Cosco urges this court that the issue of indemnification and the duty to defend was already decided by this court in Dobbelaere's appeal affirming the decision of the trial court in the underlying lawsuit. However, that decision was based wholly on successor corporate liability in tort. The action presently before this Court does not lie in tort at all, rather it is based in contract, and thus, Cosco's initial argument must fail. Therefore, the question turns on the language of the contracts executed between Cosco and Aircap and then between Aircap and MTD.
It is well settled that when a contract is clear on its face no other interpretation may lie. First Nat. Bank v. Houtzer (1917),96 Ohio St. 404, 117 N.E. 383. The Supreme Court stated "the first general maxim of interpretation is that it is not allowable to interpret what has no need of interpretation. When a writing is worded in clear and precise terms, when its meaning is evidence and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning which it naturally presents."Lawler v. Burt (1857), 7 Ohio St. 350.
The record before us contains the agreement executed between Cosco and Aircap in January 1985. The agreement contained standard information concerning the acquisition and purchase of the assets of a corporation. The agreement set out in detail exactly what Aircap was purchasing. It stated in pertinent part:
Sale and Purchase of Assets
 * * * Seller shall sell, transfer, assign, convey, set over and deliver to Buyer, and Buyer shall purchase and acquire from Seller at closing (as hereinafter defined) all of the assets of Seller used in or relating to the Business, including without limitation, the rights properties, and other assets used in or relating to the Division * * *
 1.1.3 Contractual Rights
 All right and interest of Seller in and to those contracts, agreements, leases, commitments, licenses, sales and purchase orders, and product warranty and service agreements relating to the Business and in effect on the Closing date.
The asset-purchase agreement went on to outline with specificity how the Buyer, Aircap, would indemnify and defend the Seller, Cosco, for all assumed liabilities. It stated in pertinent part:
8.2 Indemnification by Buyer
 * * * Buyer shall defend, indemnify and save Seller harmless from and against any and all loss, cost, damage or expense (including attorneys' fees) whatsoever resulting from or arising out of
 (ii) the Assumed liabilities
As stated above, after the purchase of Cosco Aircap sold its assets to MTD on June 3, 1986. The agreement included a detailed indemnification provision. The pertinent portions of the provision are as follows:
8.2 Indemnification by Buyer
 (a) From and after the Escrow Closing Date, but subject to the conditions and limitations set forth in this Agreement, Buyer shall defend, indemnify and save Seller harmless from and against any and all loss, cost, damage or expense (including attorneys' fees) whatsoever resulting from or arising out of:
 * * *
 (ii) The assumed liabilities
The liabilities assumed by MTD and covered under the indemnification provision included the following:
Sale and Purchase of Assets
 * * * Seller shall sell, transfer, assign, convey, set over and deliver to Buyer, and Buyer shall purchase and acquire from Seller at the Closing (as hereinafter defined) all of Seller's right, title and interest in and to the assets used in or relating to the Business, including, without limitation, the rights, properties, and assets listed below:
 * * *
 1.1.4 Contractual Rights
 All right and interest of the Seller in and to the contracts, agreements, leases, commitments, licenses, sales and purchase orders, product warranty and service agreements relating to the Business, including, without limitation, such of the foregoing as are listed or described on Exhibit 1.1.4 hetero (the "Agreements")
MTD urged this Court in their brief that Section 1.1.4 of the purchase agreement between Aircap and MTD which outlines the contractual liabilities assumed by MTD did not list the purchase agreement between Aircap and Cosco and thus MTD did not assume the liabilities contained therein. However, following the maxims of contract interpretation enunciated above, this court reads the plain language of Section 1.1.4 quite differently.
The pertinent clause outlined above used the following language to describe which contracts and agreements were to be incorporated into the sale of assets between Aircap and MTD: "including,without limitation such of the foregoing as are listed ordescribed on Exhibit 1.1.4". On its face this language is open-ended and all-inclusive. It works not to limit but to expand the coverage of the MTD acquisition. Therefore, the MTD contract, on its face, includes the Cosco agreement and thus, according to the provisions located therein, MTD has a duty to defend and indemnify Cosco. As a result, it was not error for the trial judge to grant summary judgment in favor of Cosco for purposes of indemnification.
MTD argues however, that even if we do find a duty to indemnify and defend on the part of MTD that they are not required to do so until the indemnification amount exceeds $100,000. MTD points to the indemnification article Section b. It reads:
 (b) Buyer shall not be liable for any amounts for which Seller is entitled to indemnification pursuant to paragraph (a) above until the aggregate amount for which Seller is entitled to indemnification pursuant to such paragraph exceeds [$100,000], at which time Buyer shall be liable for all amounts for which Seller is entitled to indemnification thereunder.
Once again, using the principles of contract construction enunciated above, the foregoing section of the MTD contract, on its face, limits any and all indemnification to amounts that exceed $100,000, and thus no other interpretation may lie.
The judgment entered by the trial court ordered MTD to pay $28,754.26. The record does not disclose what, if any, other damage sums or other costs are or have been made subject to the contract limitation. After careful examination of the express terms of the contract, this court finds that such order nevertheless was entered in error. Therefore, MTD's second assignment of error is sustained to the extent that the damages awarded do not exceed $100,000. The judgment of the Court of Common Pleas of Paulding County is therefore reversed in part and affirmed in part.
Judgment affirmed in part And reversed in part and Causeremanded.
 ______________________________ BRYANT, PRESIDING JUDGE
 HADLEY, P.J., and SHAW, J., concur.